UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ISRAEL DIAZ and MICHELLE LITTLE,

    Plaintiffs,

v.                                                         Case No. 3:20cv3986-TKW-HTC

GOAT EXPRESS, LLC, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Enforce Settlement Agreement. ECF Doc. 43. The Court held a hearing on the motion on June 11, 2021. Attending the hearing were Dashawn P. Hayes for the Plaintiffs, and Randall G. Rogers and Jesse C. Dyer for the Defendants. Upon consideration of the motion, Plaintiffs' response (ECF Doc. 53), counsel's argument, and for the reasons set forth below, the undersigned recommends the motion be GRANTED, and Plaintiff Diaz's claims for bodily injury be dismissed.

**I.**      **BACKGROUND**

This case arises out of a June 24, 2019, car accident between Plaintiffs: Israel Diaz and Michelle Little, and Defendants: Goat Express, LLC; Midnight Towing & Transport, LLC; Missing in Action Auto Recovery, Inc.; and Christian Carvajal

(collectively "Defendants"). ECF Doc. 1. Plaintiffs allege a truck operated by Defendant Carvajal crossed the center line of the roadway and collided with the vehicle Plaintiff Diaz was operating. Plaintiff Israel Diaz seeks compensation for bodily injuries, medical costs, and loss wages. *Id.* Plaintiff Michelle Little has filed a claim for loss of consortium. *Id.*

The vehicle driven by Defendant Carvajal was covered by a policy of insurance issued by Progressive Express Insurance Company to Defendant GOAT Express, LLC. The Progressive Policy provided bodily injury liability limits of $10,000 per person and $20,000 per accident.

On July 15, 2019, Progressive made a settlement offer to Plaintiffs, through their counsel Dashawn Hayes, to resolve Plaintiff Diaz's bodily injury claim for policy limits i.e., $10,000. ECF Doc. 43-1 at 6-13. The Progressive settlement letter to Hayes specifically stated that Progressive was "tender[ing] …$10,000 per person bodily injury liability limit to Israel Diaz, on behalf of GOAT Express LLC, Midnight Towing & Transport LLC, Missing In Action Auto Recovery Inc, and Christian Carvajal, in exchange for a release of the bodily injury claim(s) arising out of the [June 24, 2019] accident". ECF Doc. 43-1 at 6.

Included in the Progressive settlement letter was a check for $10,000 and proposed release. *Id.* at 8, 7. The check was made payable to the "Hayes Law Firm Trust Account for the Benefit of Israel Diaz", *Id.* at 8, and was accompanied by an

"Advice for Payment," describing the payment as being for "Full and Final Settlement of all Bodily Injury Claims." *Id.* at 9. The letter made clear, however, that while the check was being tendered for a release, the settlement offer was not contingent on any particular form of a release. *Id.* at 6.

Attorney Hayes negotiated the check by depositing it into his attorney trust account. Attorney Hayes also distributed some of the proceeds of the check to his clients, who then spent the money on personal matters. ECF Doc. 52-1 at 1-4. Defendants have now moved to enforce what they contend was a valid settlement agreement, consummated by the negotiation of the check.

## II.    DISCUSSION

As an initial matter, "[a] District Court has jurisdiction to enforce a settlement agreement where one party refuses to abide by the agreement and the action has not yet been dismissed." *See Kent v. Baker*, 815 F.2d 1395, 1399-1400 (11th Cir. 1987). "In determining whether an enforceable settlement agreement exists, the Court must determine two legal questions: first, whether [Plaintiff's counsel] had 'clear and unequivocal authority' to enter into a binding settlement agreement on behalf of his client . . . and second, whether a binding agreement was reached . . . under principles of contract law." *Contraband Sports, LLC v. Fit Four, LLC*, 2018 WL 6620902, at *2 (S.D. Fla. Oct. 11, 2018), quoting *Vital Pharm., Inc. v. S.A.N. Nutrition Corp.*, 2007 WL 1655421, at *4 (S.D. Fla. June 6, 2007).

### A. Was Hayes Authorized to Settle Diaz's Claim for Bodily Injury?

State law governs the scope of an attorney's authority to enter into a settlement agreement. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994) (citing *Ford v. Citizens and Southern National Bank,* 928 F.2d 1118, 1120 (11th Cir. 1991)). Under Florida law, "[a] party seeking to compel enforcement of a settlement bears the burden of proving that an attorney has the clear and unequivocal authority to settle on the client's behalf." *Sharick v. Southeastern Univ. of Health Scis., Inc.*, 891 So. 2d 562, 565 (Fla. Dist. Ct. App. 2004) (citing *Cross-Aero Corp. v. Cross-Aero Serv. Corp.,* 326 So. 2d 249, 250 (Fla. Dist. Ct. App. 1976)). The employment of the attorney, alone, is not sufficient to establish "clear and unequivocal authority." *See DeJour v. Coral Springs KGB, Inc.*, 293 So. 3d 502, 503 (Fla. Dist. Ct. App. 2020). Generally, to make this determination, the attorney's testimony is required. *See Diamont v. Scottsdale Insurance Company*, 2020 WL 8187889 (S.D. Fla. Dec. 16, 2020), *report and recommendation adopted*, 2021 WL 184545 (S.D. Fla. Jan. 19, 2021).

In this case, neither Plaintiffs nor their counsel contest Hayes had the authority to settle this case on their behalf or to enter into a binding settlement agreement. Indeed, at the hearing attorney Hayes admitted he told Plaintiffs the check was a "tender for bodily injury claims," admitted he deposited the check in his trust account, and admitted his firm wrote a check to Plaintiffs from those

proceeds. This is not a case where Plaintiffs were unaware Hayes had received the check and had cashed it. *See DeJour*, 293 So. 3d at 503 (finding no settlement where attorney accepted offer by cashing check without consulting his client).

There is no dispute Plaintiffs were aware of the settlement offer. Michelle Little testified in deposition that she knew the money was from Progressive, that it was for a settlement, and that she spent the funds. ECF Doc. 52-1 at 3. Thus, even if Hayes did not have the authority to deposit the check, the Plaintiffs' ratified their counsel's acceptance of the settlement proceeds by accepting the benefits of the settlement check themselves. *See Kisz v. Massry*, 426 So. 2d 1009, 1011 (Fla. Dist. Ct. App. 1983) ("Where a party accepts the benefits of a settlement agreement or a compromise of his case and knows, or in the exercise of due diligence should have known, of the facts concerning that settlement, the party ratifies the settlement by accepting the benefits whether the settlement was in the first instance authorized by him, and he is thereafter estopped to attack the settlement.").

Having determined that Hayes had the clear and equivocal authority to enter into a settlement agreement on behalf of Diaz, the Court now turns to the second question – whether an agreement was reached.

**B.** **Was An Agreement Reached?**

To determine whether a settlement agreement was reached, the Court must, once again, look at Florida law. *See Miles v. Nw. Mut. Life Ins. Co.*, 677 F. Supp.

2d 1312, 1315 (M.D. Fla. 2009) ("Because this is a diversity action, this Court must look to Florida law in determining whether an enforceable settlement agreement was reached in the first instance."). Under Florida law, courts apply an objective test in deciding whether an enforceable contract exists. *See id.* ; *Robbie v. City of Miami,* 469 So.2d 1384, 1385 (Fla.1985) (noting that it matters not whether there was "the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing."). Defendants, as the party seeking enforcement, have the burden of establishing assent by the opposing party. *See Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. Dist. Ct. App. 1992).

To prove the existence of a contract, the following elements must be shown: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Kolodziej v. Mason*, 774 F.3d 736, 740–41 (11th Cir. 2014). A contract is formed when the parties express their mutual assent to the essential terms. *See State v. Family Bank of Hallandale*, 623 So. 2d 474, 479 (Fla. 1993) (stating that there must be a meeting of the minds as to all essential terms). Mutual assent is not necessarily an independent "element" unto itself; rather, it is evaluated by analyzing the parties' agreement process in terms of offer and acceptance. *Kolodziej*, 774 F.3d at 741. "A valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words, or

inferred in whole or in part from the parties' conduct.'" *Id.* (quoting *L & H Constr. Co. v. Circle Redmont, Inc.,* 55 So.3d 630, 634 (Fla. Dist. Ct. App. 2011) (internal quotation marks omitted)).

One type of contract is an accord and satisfaction. "An accord and satisfaction occurs where (1) the parties intended to effect a settlement or resolve an existing dispute by entering into an agreement; and (2) the parties have engaged in actual performance in relation to the new agreement in order to resolve or settle the dispute." *Vencor Hosps. v. Blue Cross Blue Shield of Rhode Island*, 169 F.3d 677, 682 (11th Cir. 1999) (quoting *Pogge v. Department of Revenue,* 703 So.2d 523, 526 (Fla. Dist. Ct. App. 1997)). When Plaintiffs negotiated the check, they created a binding accord and satisfaction of Diaz's bodily injury claims. *See United Auto Ins. Co. v. Palm Chiropractic Center, Inc.*, 51 So. 3d 506, 509 (Fla. Dist. Ct. App. 2010) ("This court has long held that cashing a check containing language that it is in full payment of the debtor's obligations creates an accord and satisfaction with regard to the claim for which payment was tendered.").

In *United Auto*, the insurer tendered a check to Palm, along with a letter containing the following notation: "Pay to the order of PALM CHIROPRACTIC CTR FOR FULL & FINAL PAYMENT OF PIP BENEFITS F/A/O JOYCE THOMAS." *See id.* at 507. Palm cashed the check but continued to treat Thomas. United Auto, however, refused to pay any additional PIP benefits to Palm and thus

Palm sued United Auto in state court. Both parties moved for summary judgment. United Auto argued when Palms cashed the check it was an accord and satisfaction. Palm argued the "accepted check was but a partial payment for services rendered." *Id.* at 507-08. The circuit court granted Palms' motion and United Auto filed a petition for writ certiorari.

Although the appellate court denied the writ, it did so only because a writ of certiorari should not be used to correct a legal error. *See id.* at 508. The court nonetheless concluded the circuit court "incorrectly applied the correct law," because "[a]t the time the check was tendered in this case, there were sessions for which United Auto was not offering to pay. The check and cover letter clearly indicated the insurer's position that no further payments would be made." *See id.* at 509.

Plaintiffs attempt to distinguish *United Auto*, but their attempt is unavailing. *Like* the facts in *United Auto*, the Progressive settlement check was accompanied by an "advice for payment" that described the check as "full and final settlement of all bodily injury claims." *Like* the facts in *United Auto*, Plaintiffs cashed the check. *Like* the facts in *United Auto*, Plaintiffs argue they did not know the $10,000 was all they were getting. *Like* the determination by the appellate court in *United Auto*, this Court finds "[a]n accord and satisfaction result[ed] as a matter of law 'when [Plaintiff] accept[ed] payment tendered on the express condition that its receipt is

deemed to be a complete satisfaction of a disputed issue.'" *Id.* at 509.  The fact that Hayes first deposited the check into his trust account does not make *United Auto* any less applicable.

Plaintiffs argue there was no binding settlement agreement because they did not execute the proposed release.  The cover letter accompanying the settlement check, however, clearly stated that the "tender of policy limits is not conditioned upon the execute of any particular form of a release."  Thus, Plaintiffs did not have to execute the proposed release to accept the settlement.  In other words, other than cashing the check there was no other conduct Plaintiffs had to take.  *See W.C. Murphy Architect, P.A. v. W.P. Austin Constr. Corp.*, 547 So. 2d 302, 303 (Fla. Dist. Ct. App. 1989) (holding that a check does not create a contract when multiple steps need to be completed, such as executing a letter, along with accepting the money).

The only condition Plaintiffs had to agree to was a release (or satisfaction) of the bodily injury claims, which they did by cashing the check.  *See McGhee v. Mata*, 330 So. 2d 248, 249 (Fla. Dist. Ct. App. 1976) ("if a [company] clearly attaches to his offer the condition that the offer, if taken at all must be received in satisfaction of the claim in dispute, and the other party received it, he takes that offer subject to the conditions attached to it, and the offer operates as an accord and satisfaction"); *Martinez v. South Bayshore Tower, LLLP*, 979 So. 2d 1023, 1024

(Fla. Dist. Ct. App. 2008) ("if an offer clearly serves as an accord and satisfaction, and the other party accepts the offer, then he or she is bound to the conditions attached").

As Judge Collier stated in *Burke Co. v. Hilton Dev. Co.*, 802 F. Supp. 434 (N.D. Fla. 1992), "the accord is an offer predicated on the condition that the amount tendered be in full satisfaction of the creditor's claim" and "the acceptance of the payment carries with it the acceptance of the condition." *Id.* at 439. Also, "[r]egarding the satisfaction, it is clear that when the plaintiff accepted and negotiated the defendant's check, the plaintiff did so with the understanding that it was tendered only on the express condition that it be accepted in full satisfaction of the plaintiff's claim. Of this there can be no question." *Id.; see also, Oriole Gardens Condo. Ass'n I v. Aspen Specialty Ins. Co.*, 875 F. Supp. 2d 1379, 1383 (S.D. Fla. 2012) ("To settle that claim, Aspen issued a check to OGCA for the full claim amount of $306,789.48, which OGCA accepted unconditionally. These facts establish that the parties intended Aspen's payment to satisfy its liability for the ACV element of OGCA's property-damage claim. Therefore, OGCA's present claim for ACV benefits—brought years after its original claim was settled—is foreclosed by accord and satisfaction.")

If Plaintiffs were not going to agree to *any* form of a release, then they should not have cashed the check. *Burke Co.*, 802 F. Supp. at 439 ("basic contract law,

therefore, afforded the plaintiff in this case the option of accepting the check on the defendant's terms or of returning it; thereby, effectively rejecting the condition"). An "injustice … would result from permitting a party to accept another's check on the express condition that it discharge a prior debt, and then later turn around and sue the first party for the remainder due under the original debt….[ ] such a view runs afoul of both logic and sound public policy, as it calls for the elimination of a convent and valuable tool for resolving disputes informally without litigation." *Id.* (granting summary judgment based on negotiation of settlement check which served as "full and final settlement of all sums owed").

Plaintiffs also argue there was no meeting of the minds because there were no discussions between Plaintiffs and the insurer, and no demand made by Plaintiffs on the insurer. These arguments are red herrings and are belied by the documents. First, Plaintiffs do not have to make a demand on Progressive for a settlement offer to be made. Second, while settlement agreements can be the result of lengthy settlement negotiations and discussions, they need not be.

Additionally, Plaintiffs argue there was no meeting of the minds because Plaintiffs did not know that $10,000 was all they were getting. At the hearing Plaintiffs' counsel pointed out that the proposed release, which accompanied the check, was broader than the language in the settlement letter and the advice for payment as it contemplated a release of all claims – thus creating ambiguity as to

the purpose of the $10,000. While the proposed release is indeed broader and contemplates a release of all claims, as stated above, the settlement was not contingent on any specific form of a release. Moreover, if Plaintiffs had any question about what the $10,000 was for or what it meant, they could have easily notified Progressive that it was their intent to treat the check as partial payment. *See J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 927 (11th Cir. 2014) (rejecting accord and satisfaction argument because "[c]orrespondences between the parties make clear that J.B.D. intended to treat the check as partial payment of the $181,750.94 settlement value J.B.D. believed MCC owed it"). Hayes admitted, however, that he made no attempts to contact Progressive after receiving the settlement offer.

    Finally, Plaintiffs argue that by continuing to defend this action and not moving to dismiss, Defendants' conduct also does not support that a settlement was reached. While that argument is more persuasive than Plaintiffs' other arguments, it still does not win the day. As Defendants explained, they needed testimony from the Plaintiffs before proceeding with a motion to enforce. While Defendants could have been more diligent in obtaining that testimony, their failure to move to enforce the settlement until now does change the fact that an offer of $10,000 as full and final settlement of all bodily injury claims was made and, more importantly, that it was accepted without qualification.

Indeed, counsel was asked what the $10,000 was for if not, at a minimum, a release of Diaz's bodily injury claims. In response, counsel explained the $10,000 was essentially a down payment, on an eventual judgment or on a much greater settlement. That argument rings hollow. Defendants would not have simply offered to give $10,000 to Plaintiffs if they were not going to get something in return. That something was, as stated in the settlement letter and advice of payment, a release of Diaz's bodily injury claim.

Accordingly, it is RESPECTFULLY RECOMMENDED, that Defendants' motion to enforce settlement agreement (ECF Doc. 43) be GRANTED and Israel Diaz be precluded from recovering on his bodily injury claims.

At Pensacola, Florida, this 17th day of June, 2021.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed **within fourteen (14) days** of the date of this Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 63.